LANHAM, Appellee,

v.

MIERZWIAK, Appellant.

[Cite as *Lanham v. Mierzwiak*, 197 Ohio App.3d 426, 2011-Ohio-6190.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–11–1022.

Decided Dec. 2, 2011.

Beverly J. Cox, for appellee.

John L. Straub, for appellant.

YARBROUGH, Judge.

{¶ 1} David Mierzwiak appeals from a decision of the Lucas County Court of Common Pleas, Domestic Relations Division, which, using the extrapolation method, increased his child-support obligation.

{¶ 2} On May 20, 2003, the marriage of Mierzwiak and appellee, Jacqueline Lanham, was dissolved pursuant to a decree of dissolution of marriage. A separation agreement and shared-parenting plan was attached and incorporated into the decree.

{¶ 3} The separation agreement set forth the parties' agreed child support, which was based upon Mierzwiak's annual income of $315,000 and Lanham's annual income of $37,200. The trial court ordered Mierzwiak to pay $584.88 per month per child for each of the four minor children, for a total obligation of $2,585.17 including processing charges.[1] In addition to the agreed monthly child-support payment, Mierzwiak agreed to pay $2,000 per month in spousal support to Lanham through August 2009.

{¶ 4} In February 2005, Mierzwiak moved the trial court for modification of his child-support obligation based upon a change in circumstances with respect to the oldest child, who came to live with him full-time. On November 20, 2007, the trial court rendered a judgment entry that provided that the parties agreed to the following child-support obligation based upon Mierzwiak's annual total gross income of $352,379 and Lanham's annual total gross income of $86,923:

{¶ 5} "1. Commencing October 1, 2007 and continuing through June 30, 2008, [Mierzwiak] shall pay, as and for child support for the three remaining minor

---

1. This agreed child-support obligation is inclusive of a $28,160.85 deviation. Without such a deviation, appellant's monthly child-support obligation as calculated on the child-support computation worksheet would have been $4,978.84 per month in total for the four minor children.

children, the amount of [$800] per month, per child, plus a [2 percent] processing fee, for a total monthly payment of [$2,448];[2]

{¶ 6} "2. Commencing July 1, 2008 and continuing through June 30, 2009, [Mierzwiak] shall pay, as and for child support for the two remaining minor children, the amount of [$1,200] per month, per child, plus a [2 percent] processing fee, for a total monthly payment of [$2,448];

{¶ 7} "3. Commencing July 1, 2009 and continuing through August 31, 2009, [Mierzwiak] shall pay, as and for child support for the one remaining minor child, the amount of [$2,400] per month, for the one minor child, plus a [2 percent] processing fee, for a total monthly payment of [$2,448].

{¶ 8} "4. As of September 1, 2009, the child support obligation of the parties shall be subject to recalculation based upon the law then in effect."

{¶ 9} Mierzwiak's spousal-support obligation remained unchanged.

{¶ 10} Thereafter, on June 11, 2009, Lanham filed a motion to modify child support because the November 2007 order did not account for child support for the remaining minor child subsequent to August 31, 2009. In response to this motion, Mierzwiak filed his own motion to modify child support and argued that child support for the remaining minor child should remain at $2,400 per month after August 31, 2009. Subsequently, on January 29, 2010, Lanham filed an amended motion to modify support in which she requested attorney fees and costs.

{¶ 11} In a decision dated May 14, 2010, the magistrate ordered Mierzwiak to pay $4,576.25[3] per month in child support for the remaining minor child. In reaching this decision, the magistrate determined that Mierzwiak's annual gross income was $545,829 and Lanham's was $111,491, which included her husband's annual income. Further, the magistrate found that there was a vast disparity in the income of the parties and that R.C. 3119.04(B) is applicable. In his decision, the magistrate relied on *Bunkers v. Bunkers*, 6th Dist. No. WD–06–030, 2007-Ohio-561, 2007 WL 431418, ¶ 23, in which we determined that the trial court did not abuse its discretion by using the extrapolation method to calculate the proper amount of child support.

{¶ 12} In support of his decision, the magistrate considered that Lanham worked 80 hours per week to earn an income "that is significant but such a

---

2. This agreed amount reflects an upward deviation from the calculation on the child-support computation worksheet. Without the upward deviation, Mierzwiak's child-support obligation would have been $1,732.69 per month including processing charges, or $577.56 per month per child.

3. This sum includes $4,486.52 in child support and a 2 percent processing charge.

schedule is burdensome especially when raising a teenage daughter. There is no doubt that [Mierzwiak] also works numerous hours per week but his income does not coincide with or compliment his work schedule." The magistrate concluded, "The Court has computed child support at both the $150,000.00 level and the extrapolated level. The Court finds that the extrapolated amount is reasonable and in compliance with R.C. 3119.04."

{¶ 13} Subsequently, Mierzwiak filed objections to the magistrate's decision. Thereafter, in adopting the magistrate's decision, the trial court found "no reason under the circumstances of the case and the facts presented not to use the extrapolation method of computation in determining child support. The magistrate considered the incomes of the parties, the needs of the parties, the work/lifestyle of the parties, the marginal costs of the health insurance expense incurred for the child and the time-sharing arrangement of the parties with their child. The Magistrate mathematically-correctly extrapolated the statutory child support guidelines with the parties' combined income exceeding $150,000. The Court finds the application of the extrapolation method to be in the best interests of the child and fair and equitable to the parties. In these regards, the Court reminds the parties that the child is entitled to the economic lifestyle which she would have enjoyed had the parties remained married." The trial court also determined that each party was responsible for his or her own costs and attorney fees. From this decision, Mierzwiak appeals, asserting three assignments of error.

{¶ 14} In his first assignment of error, Mierzwiak contends:

{¶ 15} "It was reversible error for the trial court to utilize the extrapolation method to calculate child support, without considering the qualitative needs and standard of living of the child and parents."

{¶ 16} A trial court is vested with broad discretion in deciding child-support matters and will be reversed only upon a finding that the trial court abused its discretion. *Dunbar v. Dunbar* (1994), 68 Ohio St.3d 369, 371, 627 N.E.2d 532, citing *Booth v. Booth* (1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028; *Kendall v. Kendall*, 6th Dist. No. OT–04–004, 2005-Ohio-1777, 2005 WL 859447, ¶ 8. An abuse of discretion connotes that the court's attitude is "unreasonable, arbitrary or unconscionable and not merely an error of law or judgment." *Kunkle v. Kunkle* (1990), 51 Ohio St.3d 64, 67, 554 N.E.2d 83, citing *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. "Where a judgment is supported by some competent, credible evidence, there is no abuse of discretion." *Barone v. Barone*, 6th Dist. No. L–07–1336, 2008-Ohio-5793, 2008 WL 4823343, ¶ 15, citing *Van Vorce v. Van Vorce*, 3d Dist. No. 2–04–11, 2004-Ohio-5646, 2004 WL 2377839, ¶ 15.

{¶ 17} In his first assignment of error, Mierzwiak argues that it was reversible error for the trial court to use the extrapolation method to calculate his modified child-support obligation under R.C. 3119.04(B), "without considering the qualitative needs and standard of living of the child and parents." Mierzwiak argues that his new child-support obligation is excessive, and that *Siebert v. Tavarez*, 8th Dist. No. 88310, 2007-Ohio-2643, 2007 WL 1559565, supports his contention.

{¶ 18} In *Siebert*, the father earned $2.6 million per year and the use of extrapolation would have resulted in a monthly child-support award of $21,666. *Id.* at ¶ 35. The *Siebert* court stated, "Some Ohio courts have employed the 'extrapolation' method of calculating child support in cases where the basic child support schedule is inapplicable because the combined income of the parents exceeds $150,000. This method takes the applicable percentage under the child support schedules for couples with combined incomes of $150,000 and applies it directly to whatever income the parents make. For example, in [*Cyr v. Cyr*, 8th Dist. No. 84255, 2005-Ohio-504, 2005 WL 315375,] we noted that if the guideline percentage was 14.6%, the court would apply 14.6% of the combined incomes for child support * * *. Some courts have continued to use the extrapolation method of calculating child support under R.C. § 3119.04(B)." *Id.* at ¶ 32–33. The *Siebert* court concluded that "as the combined income of the parents rises sharply, mere extrapolation can lead to large, and possibly unrealistic, child support amounts." *Id.* at ¶ 35. Relying on *Siebert*, Mierzwiak argues that the use of the extrapolation method resulted in an excessive child-support award.

{¶ 19} Our analysis of the trial court's judgment that adopted the magistrate's decision begins with R.C. 3119.04(B), which provides:

{¶ 20} "If the combined gross income of both parents is greater than [$150,000] per year, *the court, with respect to a court child support order * * * shall determine the amount of the obligor's child support obligation on a case-by-case basis and shall consider the needs and the standard of living of the children who are the subject of the child support order and of the parents.* The court * * * shall compute a basic combined child support obligation that is no less than the obligation that would have been computed under the basic child support schedule and applicable worksheet for a combined gross income of [$150,000] unless the court * * * determines that it would be unjust or inappropriate and would not be in the best interest of the child, obligor, or obligee to order that amount. If the court * * * makes such a determination, it shall enter in the journal the figure, determination, and findings." (Emphasis added.)

{¶ 21} We have construed this provision to mean that the trial court must " '(1) set the child support amount based on the qualitative needs and standard of living of the children and parents; (2) ensure that the amount set is not less than the

$150,000–equivalent, unless awarding the $150,000–equivalent would be inappropriate (i.e. would be too much); and (3) if it decides the $150,000–equivalent is inappropriate or unjust (i.e. awards less), then journalize the justification for that decision.' " *Barone*, 2008-Ohio-5793, 2008 WL 4823343, at ¶ 18, quoting *Zeitler v. Zeitler*, 9th Dist. No. 04CA008444, 2004-Ohio-5551, 2004 WL 2348151, ¶ 8.

{¶ 22} In fact, this court has specifically stated, " ' "Nothing in the new version of the statute, however, prohibits the court from using [extrapolation] to determine the amount of support due in high income cases; it merely no longer mandates that the court use this method. Moreover, the statute does not require any explanation of its decision unless it awards less than the amount awarded for combined incomes of $150,000. [A] trial court [does not err] therefore, if it used the extrapolation method to determine the amount of child support due." ' " *Bunkers*, 2007-Ohio-561, 2007 WL 431418, at ¶ 21, quoting *Kendall*, 2005-Ohio-1777, 2005 WL 859447, at ¶ 25, quoting *Cyr v. Cyr* (Feb. 10, 2005), 8th Dist. No. 84255, 2005-Ohio-504, 2005 WL 315375, ¶ 56.

{¶ 23} Applying existing case law to Mierzwiak's assignment of error, we conclude that the trial court did not abuse its discretion in making the child-support award. Because the amount set is not less than the $150,000 equivalent, the trial court was not required to make any findings. *Barone* at ¶ 19, citing *Siebert*, 2007-Ohio-2643, 2007 WL 1559565, at ¶ 31. See also *Cyr*, 2005-Ohio-504, 2005 WL 315375, at ¶ 55. Rather, the trial court was required only to "consider the needs and the standard of living of the children who are the subject of the child support order and of the parents." R.C. 3119.04(B).

{¶ 24} Lanham is a registered nurse and massage therapist. She is currently employed by St. Vincent Medical Center, Mercy Home Care, and Northwest Ohio Emergency Services. In regard to her needs and standard of living, the court considered that Lanham must work 80 hours per week in order to maintain a level of income to provide for her daughter's basic needs. Lanham's testimony regarding this issue is as follows:

{¶ 25} "[Lanham's attorney] Are you able to provide for [the minor child] the same standard of living in your home that she has in her father's home?

{¶ 26} "[Lanham] Right now? I provide for her needs I would say—

{¶ 27} "[Lanham's Attorney] My question in—

{¶ 28} "[Lanham] —more so—

{¶ 29} "[Lanham's Attorney] —are you able to provide the same standard of living in your home as her father's home.

{¶ 30} "[Lanham] No, I can't but I try.

{¶ 31} "[Lanham's Attorney] And when you say you try, what do mean?

{¶ 32} "[Lanham] No, I try to—to provide her with—I guess I'm just—I do by working my jobs I'm able to—to—I mean, honestly I just do the basics.  * * *."

{¶ 33} "[Lanham's Attorney] Why are you working two jobs?

{¶ 34} "[Lanham] So that I can pay for my house and the electric and the kids' groceries and—and the expenses that are—there are minimal expenses that they had ever since we were married.

{¶ 35} "[Lanham's Attorney] Are you able to do that without working two jobs?

{¶ 36} "[Lanham] No, I am not."

{¶ 37} The trial court also considered that Lanham had refinanced her home twice and that she wished to reduce her working hours but would not be able to provide the basic needs of her child if she reduced her hours.  Lanham also testified that she has had to use the equity in her home to meet her monthly expenses.

{¶ 38} Mierzwiak is a physician employed by Omni Health Services Limited, a partnership, and Omni Administrative Service Corporation.  Mierzwiak is paid an hourly wage by Omni Health Services and also received bonus payments from Omni Administrative Services.  As to his needs and standard of living, Mierzwiak testified that his corporation took on additional partners so that he would not have to work more than 60 hours per week.  Despite this, Mierzwiak's annual income has increased from $315,000 in 2003 to $545,829 in 2009.  Mierzwiak also testified that this new child-support payment causes a financial hardship.  In support of this, Mierzwiak testified that he spends approximately $3,500 per month paying for the college educational expenses of his three older children.  At the time of the hearing, however, Mierzwiak had paid all tuition due for the year for his older children, with $2,000 remaining in a college savings fund.  Further, Mierzwiak testified that he took out education loans for his oldest child in the amount of $114,000.  He argues on appeal that it was not necessary for Lanham to take out any educational loans.  However, Mierzwiak took out the loans, not out of necessity, but rather with the intention of investing the proceeds in an education account earning a higher interest rate than the loan interest rate to "hopefully come out ahead."  We note that Mierzwiak went on to testify that "when the market tanked last year so did the fund, and that's why I'm just leaving that money in that fund and that's the money that I'm going to use to pay back the college loans."  Despite this, at the time of the hearing, Mierzwiak had managed to save $45,000 to repay the educational loan that would not be due until after December 2010.  Mierzwiak also testified that he was able to contribute the maximum amount to his 401(k), approximately $46,000 in 2009.  Evidence admitted in the trial court also shows that Mierzwiak contributed $9,730 into a health savings account in 2009.

{¶ 39} Finally, in regard to the needs and standard of living of the remaining minor child, the magistrate plainly stated that he reviewed the "standard of living, educational costs, sports, and other enrichment activities for the minor child" as well as "the actual time share of the parents in conjunction with the parties' responsibilities pursuant to their Shared Parenting Plan." Testimony was elicited in the trial court that the minor child spends four days per week with Lanham and three days with Mierzwiak, but she spends some time each day at Lanham's house eating and doing laundry. Testimony reveals that the minor child takes art classes and that Lanham's work schedule made it difficult for the minor child to participate in travel volleyball. Thus, it is evident that the trial court considered the needs and lifestyle of the child, but also the needs and lifestyle of both parents when extrapolating the child-support payment.

{¶ 40} Therefore, because the trial court considered the needs and standard of living of both parties and the children as required by R.C. 3119.04(B), we cannot hold that the trial court erred.

{¶ 41} Accordingly, appellant's first assignment of error is found not well taken.

{¶ 42} Mierzwiak's second assignment of error states:

{¶ 43} "It was reversible error for the trial court to fail to apply the *Barone* case in determining the award of child support."

{¶ 44} In *Barone*, 2008-Ohio-5793, 2008 WL 4823343, at ¶ 19, this court reiterated that "R.C. 3119.04(B) neither contains nor references any factors to guide the court's determination in establishing the amount of child support; instead, the court must determine the amount of child support on a *case-by-case* basis. Moreover, unless the court awards support that is less than the amount listed in the child support guidelines worksheet for combined incomes of $150,000, the court need not state its reasons for the determined amount." (Emphasis added and citations omitted.)

{¶ 45} We also specifically noted that "deviations pursuant to R.C. 3119.22 and factors relevant to granting deviations pursuant to R.C. 3119.23 are expressly applicable only to deviations from the basic support schedule and worksheet—and not case-by-case determinations under R.C. 3119.04(B)." *Barone* at ¶ 20. We held that the trial court did not abuse its discretion considering the deviation factors set forth in R.C. 3119.23 in determining an appropriate support order when the parties' combined incomes exceed $150,000, so long as the court fulfills the analysis mandated by R.C. 3119.04(B). *Id.* Thus, we concluded that the trial court was not required to apply the deviation factors in order to come to a reasonable child-support order; it simply did not abuse its discretion in so considering those factors.

{¶ 46} *Barone* is further distinguishable from the instant case because, in addition to the $1,800 in child support per month, the father in *Barone* voluntarily contributed $25,000 per year for private school tuition, clothing, educational expenses, expenses for sports activities, living expenses, and vacation expenses for the minor child. *Barone* at ¶ 10–11. Most importantly, however, R.C. 3119.04(B) requires that the trial court examine each case on a *case-by-case* basis. For reasons specifically stated in appellant's first assignment of error, we find that the trial court properly considered the standard of living for the parents and child in determining the modified child-support amount.

{¶ 47} Accordingly, appellant's second assignment of error is not well taken.

{¶ 48} In his third assignment of error, appellant argues:

{¶ 49} "It was reversible error for the trial court to award child support as a substitute for Ms. Lanham's recent loss in spousal support."

{¶ 50} Appellant's argument is that he previously paid an agreed spousal-support payment of $2,000 per month in addition to the $2,400 monthly child-support obligation. Because Mierzwiak's new child-support payment amounted to approximately $4,576.25 per month, he concludes that the trial court's award is "an attempt to compensate [appellant] for her 'lost' spousal support payments."

{¶ 51} We disagree. The fact that Mierzwiak's previous combined child-support and spousal-support payment is relatively the same amount as his new child-support payment is a mathematical coincidence. The trial court used Mierzwiak's gross income of $545,829 and Lanham's gross income of $111,491. The trial court then used the extrapolation method to determine Mierzwiak's child-support obligation of $65,186.84. After imputing Lanham's income, the trial court arrived at Mierzwiak's annual child-support obligation of $53,838.25.[4] In so computing the new amount, the trial court used a mathematical formula, and Mierzwiak does not contend that any mathematical error occurred in the trial court's calculation.

{¶ 52} As we have previously determined that the trial court properly considered the needs and standard of living of the child who is the subject of the child-support order and of the parents as required by R.C. 3119.04(B), nothing further was required of the trial court.

{¶ 53} Therefore, we find appellant's third assignment of error not well taken.

---

4. Final child-support figure when health insurance is provided.

{¶ 54} The judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, is hereby affirmed. Pursuant to App.R. 24, Mierzwiak is ordered to pay costs of this appeal.

Judgment affirmed.

OSOWIK, P.J., and HANDWORK, J., concur.