[Cite as *In re J.M.G.*, 2013-Ohio-2693.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 98990**

---

# IN RE: J.M.G.
# A MINOR CHILD

## [Appeal by: R.B., Father]

---

**JUDGMENT:**
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. SU 09722663

**BEFORE:** Rocco, J., Boyle, P.J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** June 27, 2013

**ATTORNEYS FOR APPELLANT**

Deanna L. DiPetta
Victoria A. Glowacki
Andrew A. Zashin
Zashin & Rich Co., L.P.A.
55 Public Square, 4th Floor
Cleveland, Ohio 44113


**ATTORNEY FOR APPELLEE J.G.**

Patrick M. Farrell
Patrick M. Farrell Co., L.P.A.
600 East Granger Road, 2nd Floor
Brooklyn Heights, Ohio 44131

**ATTORNEYS FOR C.J.F.S.**

Timothy J. McGinty
Cuyahoga County Prosecutor

By:   Joseph C. Young
Assistant County Prosecutor
C.J.F.S.
P.O. Box 93894
Cleveland, Ohio   44101-5984

KENNETH A. ROCCO, J.:

{¶1}  Obligor-appellant R.B. appeals from the judgment of the Cuyahoga County Court of Common Pleas, Juvenile Division, ordering R.B. to pay $3,908.15 in monthly child support to obligee-appellee, J.G., for the support of their minor child, J.M.G.   For the reasons that follow, we affirm the trial court's judgment.

**Factual and Procedural Background**

{¶2} J.M.G. was born on August 3, 2008.   After the child was born, R.B. filed a custody case in the Cuyahoga County Court of Common Pleas, Juvenile Division (Cuyahoga C.P. No. PR 09705332), for the purpose of determining custody and companionship rights with respect to J.M.G.   On June 22, 2009, while the custody action was pending, the Cuyahoga County Child Support Enforcement Agency ("CSEA") issued an administrative child support order requiring R.B. to pay J.G. $4,528.11 a month, plus a 2 percent processing fee, for child support for J.M.G. and to provide medical insurance for the child.   On July 21, 2009, R.B. filed objections to the CSEA's administrative child support order, along with a motion to modify support and a motion to stay enforcement of the administrative child support order, in the pending custody case.

{¶3} By magistrate's order in the custody case, entered on September 19, 2009, R.B. was found not to have properly perfected his objections to the administrative child support order.   He was granted leave until October 19, 2009, to amend and correct the deficiencies with his objections.   R.B. contends that his counsel never received a copy of the September 19, 2009 order and did not learn of the order until a subsequent pretrial in

the custody matter. In any event, R.B. failed to comply with the September 19, 2009 order. Accordingly, on December 30, 2009, the trial court entered a judgment entry in the custody case, dismissing R.B.'s objections to the administrative child support order without prejudice. The administrative child support order then went into effect.[1]

{¶4} On December 8, 2009, prior to the dismissal of his objections in the custody action, R.B. filed the support action that is the subject of this appeal (Cuyahoga C.P. No. SU 09772663), in which he refiled the objections to the administrative order, motion to modify support, and motion to stay enforcement of the administrative child support order that he had previously filed in the custody case, along with an application to adopt administrative order, an application to determine child support, and a motion to correct child support arrearage and determine overpayment. R.B. argued that his monthly child support payment as set forth in the administrative order was excessive and that the CSEA's calculation of the parties' child support obligations violated R.C. 3119.04(B). R.B. also argued that his annual income had decreased, and was expected to continue to decrease, as a result of tort reform and a decision issued by the Ohio Supreme Court that limited claims in his primary area of practice.

---

[1]With the exception of R.B.'s objections to the CSEA's administrative child support order, motion to modify support, and motion to stay enforcement of the administrative child support order filed on July 19, 2009, none of the documents from the custody case, including the magistrate's September 19, 2009 order (requiring R.B. to correct certain deficiencies with his objections) nor the December 30, 2009 judgment entry (dismissing his objections) is included in the record in this case. Accordingly, this recitation of the facts, as it relates to the custody case, is based on the undisputed facts as set forth in the briefs of the parties and the trial court's August 27, 2012 judgment entry in this case.

{¶5} On October 6, 2010 and November 30, 2010, the magistrate held hearings on the motions. On July 11, 2011, the magistrate issued a decision (1) denying R.B.'s objections to the administrative order on the basis of res judicata, and (2) denying R.B.'s motion to modify his child support obligation on the ground that R.B. had failed to prove a change in circumstances sufficient to warrant a modification of the child support order. Under the magistrate's decision, R.B.'s monthly child support obligation of $4,528.11 (plus fee) remained unchanged. On July 25, 2011, R.B. filed "preliminary objections" to the magistrate's decision. Without ruling on R.B.'s objections, on October 5, 2011, the trial court entered judgment on the magistrate's decision, adopting the magistrate's decision in full.

{¶6} On October 27, 2011, R.B. filed an appeal with this court. The appeal was dismissed for lack of a final, appealable order and remanded to the trial court. Upon remand, the trial court permitted the parties to submit supplemental objections to the magistrate's decision. In his preliminary and supplemental objections, R.B. objected to the magistrate's recommended denial of his December 8, 2009 objections to the administrative child support order, arguing that (1) denial of his objections would elevate "form over substance" and violate due process, and (2) the December 30, 2009 dismissal of his July 21, 2009 objections had no res judicata effect. R.B. also objected to the magistrate's recommended denial of his motion to modify his child support obligation, arguing that (1) the court abused its discretion in determining that there had not been a sufficient change in circumstances to warrant modification of the child support order, (2)

additional income should have been imputed to J.G., and (3) the calculation of his child support obligation did not comply with R.C. 3119.04(B) and 3119.22.

{¶7} On August 27, 2012, the trial court issued a judgment entry, ruling on each of R.B.'s objections and adopting the magistrate's decision in part and modifying it in part. With respect to R.B.'s objections to the administrative child support order, the trial court determined that it had "no jurisdiction over the matters dealt with in [the custody matter]" and that R.B.'s objections to the administrative order filed on December 8, 2009, were untimely, having been filed outside the 30-day time period prescribed by R.C. 3111.84. As such, R.B.'s objections were denied. With respect to R.B.'s motion to modify the administrative child support order, the trial court determined that R.B. had demonstrated a significant change in circumstances sufficient to warrant modification of the child support order. Using the extrapolation method of computing child support, the trial court determined the parties' child support obligations (including $50,000 in income imputed to J.G.) by completing the basic child support computation worksheet based on the parties' combined gross income. Concluding that there was a greater than 10 percent difference between R.B.'s child support obligation as computed on the worksheet and the child support ordered in the June 22, 2009 child support administrative order, the trial court held that R.B. was entitled to a modification of his child support obligation. The trial court ordered R.B. to pay monthly child support of $3,908.15 if he provided health insurance for J.M.G., and $4,026.77 in monthly child support if health insurance was not provided.

**{¶8}** R.B. appeals the trial court's judgment, raising seven assignments of error:

FIRST ASSIGNMENT OF ERROR
The trial court erred in finding that the magistrate's decision was minimally sufficient so that it could conduct the independent review thereof as required by Civil Rule 53 and Juvenile Rule 40.

SECOND ASSIGNMENT OF ERROR
The trial court erred in dismissing for lack of jurisdiction the appellant's objections to the administrative child support order under the Ohio savings statute.

THIRD ASSIGNMENT OF ERROR
The trial court abused its discretion by dismissing the appellant's objections to the administrative child support order and application to determine child support after appellant had corrected any procedural defects stated in the magistrate's September 19, 2009 order.

FOURTH ASSIGNMENT OF ERROR
The trial court erred in finding that the child was entitled to the standard of living that he would have enjoyed if the parties married or resided together with the child.

FIFTH ASSIGNMENT OF ERROR
The trial court denied appellant his federal and Ohio constitutional due process right to a meaningful hearing at a meaningful time when it dismissed his objections to the administrative child support order and application to determine child support.

SIXTH ASSIGNMENT OF ERROR
The trial court abused its discretion by awarding child support in an amount exceeding the child's current needs so as to, in effect, constitute an award of spousal support to appellee.

SEVENTH ASSIGNMENT OF ERROR
The trial court's determination of appellant's child support obligation is not

supported by sufficient, competent evidence.

**Standard of Review**

**{¶9}** We review a trial court's ruling on objections to a magistrate's decision for abuse of discretion. *Gobel v. Rivers*, 8th Dist. No. 94148, 2010-Ohio-4493, ¶ 16. "In so doing, we consider the trial court's action with reference to the nature of the underlying matter." *Tabatabai v. Tabatabai*, 9th Dist. No. 08CA0049-M, 2009-Ohio-3139, ¶ 18. "Any claim of trial court error must be based on the actions of the trial court, not on the magistrate's findings or proposed decision." *Mealey v. Mealey*, 9th Dist. No. 95CA0093, 1996 Ohio App. LEXIS 1828, *6 (May 8, 1996). A trial court's decision regarding a child support obligation will not be reversed on appeal absent an abuse of discretion. *Pauly v. Pauly*, 80 Ohio St.3d 386, 390, 686 N.E.2d 1108 (1997), citing *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989). An abuse of discretion is more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). It describes a judgment neither comporting with the record, nor reason. *Klayman v. Luck*, 8th Dist. Nos. 97074 and 97075, 2012-Ohio-3354, ¶ 12, citing *State v. Ferranto*, 112 Ohio St. 667, 676-678, 148 N.E. 362 (1925). As long as the trial court's decision is supported by some competent, credible evidence, a reviewing court will not disturb it. *Brokaw v. Brokaw*, 8th Dist. No. 97477, 2012-Ohio-2630, ¶ 21, citing *Masitto v. Masitto*, 22 Ohio St.3d 63, 488 N.E.2d 857 (1986).

**Objections to Administrative Child Support Order**

{¶10} For ease of discussion, we address R.B.'s assignments of error out of order. R.B.'s second, third, and fifth assignments of error relate to the trial court's denial of his objections to the CSEA's administrative child support order. R.B. contends that the trial court's denial of his December 8, 2009 objections as untimely under R.C. 3111.84 violated the savings statute. R.B. further contends that the trial court's denial of his objections after he had corrected the procedural deficiencies with the objections constituted an abuse of discretion and denied R.B. "a meaningful hearing at a meaningful time" in violation of the due process clauses of the United States and Ohio Constitutions.[2] For the reasons that follow, R.B.'s arguments are meritless.

{¶11} R.C. 3111.84 governs the filing of objections to administrative child support orders. R.C. 3111.84 provides:

> The mother or father of a child who is the subject of an administrative support order may object to the order by bringing an action for the payment of support and provision for the child's health care under section 2151.231 of the Revised Code in the juvenile court or other court with jurisdiction

---

[2]As noted above, neither the magistrate's September 19, 2009 order, requiring R.B. to correct certain deficiencies with his objections, nor the December 30, 2009 judgment entry in the custody case, dismissing the objections based on R.B.'s failure to correct those deficiencies, is part of the record in this case. Nor do we find anything in the record in this case (other than the conclusory assertions of counsel) supporting R.B.'s contentions that he did not timely receive notice of the magistrate's September 19, 2009 order or that he promptly corrected the deficiencies with his objections once he learned of the order. Accordingly, we have no way of assessing whether R.B. corrected the deficiencies identified in the September 19, 2009 order. R.B. contends that the trial court "mistakenly dismissed" his objections in the custody case because they "were filed under the parties' custody matter * * * instead of being filed in a matter that is designated 'support'" and that he "rectified * * * any procedural defects" simply by refiling his objections in this support action. The trial court, however, observed that R.B. also failed to "(a) join all necessary parties, (b) designate the parties, and (c) seek the appropriate relief," "failings" that it described as "prejudicial to the other parties" in the case.

under section 2101.022 or 2301.03 of the Revised Code of the county in which the child support enforcement agency that employs the administrative officer is located. The action shall be brought not later than thirty days after the date of the issuance of the administrative support order. If neither the mother nor the father brings an action for the payment of support and provision for the child's health care within that thirty-day period, the administrative support order is final and enforceable by a court and may be modified only as provided in Chapters 3119., 3121., and 3123. of the Revised Code.

{¶12} In this case, it is undisputed that R.B.'s objections to the administrative child support order were filed on December 8, 2009 — well outside the statutory 30-day time frame for filing objections under R.C. 3111.84. Nonetheless, R.B. contends that the trial court erred in denying his objections to the administrative child support order based on Ohio's savings statute. Specifically, R.B. contends that because R.C. 3111.84 requires the bringing of an "action" to assert to an administrative support order, his July 21, 2009 and December 8, 2009 objections were "actions" within the meaning of Ohio's savings statute, R.C. 2305.19(A). R.C. 2305.19(A) provides, in relevant part:

> In any action that is commenced or attempted to be commenced
> * * * if the plaintiff fails otherwise than upon the merits, the plaintiff * * *
> may commence a new action within one year after the date of * * * the
> plaintiff's failure otherwise than upon the merits or within the period of the
> original applicable statute of limitations, whichever occurs later.

Thus, R.B. argues that the savings statute "saved" his otherwise untimely December 8, 2009 objections, entitling him to refile his objections within one year of the trial court's dismissal of his July 21, 2009 objections without prejudice in the custody action.

{¶13} R.B. did not raise his savings statute argument below. Generally, an appellate court will not consider a legal theory or issue a party failed to raise in the trial

court.  *See, e.g., State ex rel. Zollner v. Indus. Comm.*, 66 Ohio St.3d 276, 278, 611 N.E.2d 830 (1993).  Even if, however, we were to consider R.B.'s savings statute argument, it has no merit.

{¶14} R.C. 2305.19 affords a plaintiff a limited time period within which to refile a dismissed claim that would otherwise be time barred.  As an initial matter, we have doubts as to whether the legislature intended the savings statute to apply to "actions" raising objections to an administrative child support order.  *Compare United Tel. Credit Union, Inc. v. Roberts*, 115 Ohio St.3d 464, 2007-Ohio-5247, 875 N.E.2d 927, ¶ 25 (savings statute does not apply to actions brought under R.C. 1733.361 because its application would adversely affect the administration of conservatorship).  However, we need not decide that issue in this case because R.B. did not otherwise satisfy the requirements for application of the savings statute.

{¶15} The savings statute applies where a second action is commenced "within one year *after* the date of * * * the plaintiff's failure otherwise than upon the merits." (Emphasis added.)  R.C. 2305.19(A).  R.B.'s December 8, 2009 objections, however, were filed *prior* to the dismissal of his July 21, 2009 objections.  Accordingly, the savings statute does not "save" R.B.'s untimely December 8, 2009 objections.  *See, e.g., GLA Water Mgt. Co. v. Univ. of Toledo*, 10th Dist. No. 10AP-1129, 2011-Ohio-4655, ¶ 17 ("'the savings statute does not apply where a plaintiff files a second complaint before failing otherwise than upon the merits in a previous complaint'"), quoting *Windsor House, Inc. v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 09AP-584,

2010-Ohio-257, ¶ 19 (savings statute did not apply to plaintiff's court of claims complaint where plaintiff had not "failed otherwise than upon the merits" in the court of common pleas before filing second action in the court of claims). "Although courts liberally construe the savings statute, a plaintiff must satisfy the criteria of the statute in order to prevent circumvention of the statute of limitations and unfairness to defendants." *Boozer v. Univ. of Cincinnati School of Law*, 10th Dist. No. 05AP-1099, 2006-Ohio-2610, ¶ 32 (savings statute did not apply where plaintiff filed a second complaint before failing otherwise than upon the merits on prior complaint), citing *Motorists Mut. Ins. Co. v. Huron Rd. Hosp.*, 73 Ohio St.3d 391, 397, 653 N.E.2d 235 (1995). R.B.'s second assignment of error is overruled.

{¶16} In his third and fifth assignments of error, R.B. contends that the trial court abused its discretion in dismissing his objections to the administrative child support order after he had "corrected any procedural defects" stated in the magistrate's September 19, 2009 order. He further contends that the denial of his objections, without a hearing, after he had corrected such "defects" denied him "a meaningful hearing at a meaningful time" in violation of the due process clauses of the United States and Ohio Constitutions.

{¶17} R.B.'s complaints regarding what allegedly occurred in the custody case — e.g., his alleged non-receipt of the September 19, 2009 order, the requirement that he refile his objections in a separate support action, and R.B.'s purported correction of the "procedural defects" identified in the September 19, 2009 order prior to the dismissal of

his objections —  are not the proper subject of this appeal.  This appeal does not involve the happenings or rulings in the custody case.

{¶18} The trial court's judgment in this case —  the subject of this appeal — was not based on what R.B. or the trial court did (or failed to do) in the custody case. As the trial court aptly observed, this court "has no jurisdiction over matters dealt with in [the child custody case].  If [R.B.] wished to challenge the [c]ourt's actions in [the child custody case], he was obligated to do so then and within that case."

{¶19} With respect to R.B.'s claim that he was denied a "meaningful opportunity to be heard" concerning his objections to the administrative child support order, R.C. 3111.84 provided him such an opportunity.  Under R.C. 3111.84, a parent who is the subject of an administrative child support order may bring an action under R.C. 2151.231, objecting to the administrative order.  R.B., however, failed to perfect his objections in accordance with the statutory scheme and then chose not to challenge the trial court's actions in the custody case at the appropriate time, within that case.

{¶20} If R.B. disagreed with the September 19, 2009 order in the custody case or the subsequent judgment entry dismissing his objections for non-compliance with that order, he should have sought the appropriate relief at that time, in that case.  Having failed to do so, he cannot claim the actions of the trial court in the custody case as errors in this case.  Accordingly, R.B.'s third and fifth assignments of error are overruled.

**Calculation of Modified Child Support Obligation**

**Independent Review of Magistrate's Decision**

**{¶21}** R.B.'s remaining assignments of error relate to the trial court's calculation of R.B.'s modified child support obligation. In his first assignment of error, R.B. contends that the magistrate's decision contained insufficient facts regarding J.M.G.'s needs and the parties' standard of living and that the trial court, therefore, could not have conducted a proper independent review of the magistrate's decision as required by Civ.R. 53 and Juv.R. 40. We disagree.

**{¶22}** Under Juv.R. 40 and Civ.R. 53, when ruling on objections to a magistrate's decision, the trial court is required to conduct an "independent review" of the case, having the "ultimate authority and responsibility over the [magistrate's] findings and rulings." *Hartt v. Munobe*, 67 Ohio St.3d 3, 5, 615 N.E.2d 617 (1993). The trial court must decide "'whether the [magistrate] has properly determined the factual issues and appropriately applied the law, and where the [magistrate] has failed to do so, the trial court must substitute its judgment for that of the [magistrate].'" *Gobel*, 2010-Ohio-4493 at ¶ 16, quoting *Inman v. Inman*, 101 Ohio App.3d 115, 118, 655 N.E.2d 199 (2d Dist.1995).

**{¶23}** It is generally presumed that the trial court properly conducted an independent review of the magistrate's decision unless the party asserting the error affirmatively shows otherwise. *Hartt*, 67 Ohio St.3d at 7, 615 N.E.2d 617 ("An appellate court reviewing a lower court's judgment indulges in a presumption of regularity of the proceedings below."); s*ee also In re R.J.G.*, 8th Dist. No. 87427, 2012-Ohio-3802, ¶ 26 (in reviewing a trial court's decision, an appellate court presumes

that the trial court "did exactly what it said it did"), citing *Figel v. Figel*, 3d Dist. No. 10-08-14, 2009-Ohio-1659.

**{¶24}** In this case, the trial court clearly stated in its August 27, 2012 judgment entry that it had "made an independent review" of the magistrate's decision, the parties' respective objections and briefs, and the transcript and exhibits from the hearing upon which the magistrate's decision was issued. The trial court further stated that the magistrate's decision, "when read in conjunction with the transcripts and the exhibits," was "minimally adequate" and that the record was, therefore, "sufficient for an independent analysis and review." We do not find that the trial court erred in making this determination.

**{¶25}** The trial court then proceeded to address R.B.'s objections, providing detailed, reasoned rulings with respect to each of R.B.'s objections and specifying the facts — including facts relating to the parties' income and expenses, the child's needs, and the parties' lifestyles — supporting the trial court's conclusions, demonstrating that the trial court had a sufficient basis upon which to independently review the magistrate's decision.

The "affirmative showing" required to rebut our general presumption requires "more than a mere inference"; it requires appellant to provide the reviewing court with specific facts demonstrating that the trial court failed to conduct an independent review of the magistrate's findings. *See, e.g., In re Taylor G.*, 6th Dist. No. L-05-1197, 2006-Ohio-1992, ¶ 21. R.B. has pointed to nothing in the record that would indicate that the trial court's August 27, 2012 judgment was not the result of a proper independent review of the magistrate's decision. Accordingly, we overrule R.B.'s first assignment of error. **Use of Extrapolation Method to Calculate Modified Child Support Obligation**

{¶26} In his fourth and sixth assignments of error, R.B. challenges the trial court's use of the extrapolation method to calculate his modified child support obligation, claiming that it resulted in an award that exceeds the child's current needs and, in effect, constitutes a "spousal support award." As the party seeking a modification of the child support order, R.B. "'had the burden of proof to establish how the relevant factors would support a modification of his child support obligation.'" *Strimbu v. Strimbu*, 11th Dist. No. 2010-T-0104, 2011-Ohio-3629, ¶ 17, quoting *Maguire v. Maguire*, 9th Dist. No. 23581, 2007-Ohio-4531, ¶ 14. "'[T]he trial court has no obligation to investigate and develop evidence that the parties have failed to present.'" *Id.*, quoting *Maguire* at ¶ 14.

{¶27} When the combined income of the parties exceeds $150,000, as it does in this case, R.C. 3119.04(B) controls the determination of the parents' child support obligation. R.C. 3119.04(B) provides in relevant part:

> If the combined gross income of both parents is greater than one hundred fifty thousand dollars per year, the court, with respect to a court child support order * * * shall determine the amount of the obligor's child support obligation on a case-by-case basis and shall consider the needs and the standard of living of the children who are the subject of the child support order and of the parents. The court * * * shall compute a basic combined child support obligation that is no less than the obligation that would have been computed under the basic child support schedule and applicable worksheet for a combined gross income of one hundred fifty thousand dollars, unless the court * * * determines that it would be unjust or inappropriate and would not be in the best interest of the child, obligor, or obligee to order that amount. If the court * * * makes such a determination, it shall enter in the journal the figure, determination, and findings.

{¶28} Under R.C. 3119.04(B), the amount of child support to be awarded is left "'entirely to the court's discretion.'" *Brownlee v. Brownlee*, 8th Dist. Nos. 97037 and

97105, 2012-Ohio-1539, ¶ 26, quoting *Cyr v. Cyr*, 8th Dist. No. 84255, 2005-Ohio-504, ¶ 54. In determining an appropriate child support award, the trial court must, however, consider "the needs and the standard of living of the children who are the subject of the child support order and of the parents." R.C. 3119.04(B).

{¶29} Under R.C. 3119.04(B), the level of support for a combined gross income of $150,000 is the "starting point" from which a trial court exercises its discretion in determining an appropriate child support award in higher income cases. *Bajzer v. Bajzer*, 9th Dist. No. 25635, 2012-Ohio-252, ¶ 5. This is because R.C. 3119.04(B) expressly prohibits a trial court from awarding less than that minimum unless it makes a determination "that it would be unjust or inappropriate and would not be in the best interest of the child, obligor, or obligee to order that amount." *Brownlee* at ¶ 26. Child support awards in excess of that minimum are, however, "anticipated by R.C. 3119.04(B) and are not deviations." *Bajzer* at ¶ 5. The trial court is not required to make any specific findings or to provide any explanation for its child support award unless it awards less than the amount calculated for combined incomes of $150,000. *Brownlee* at ¶ 26; *Cyr* at ¶ 56.

{¶30} In this case, the record reflects that R.B. is an attorney with an annual income of $470,000 from his law practice. He resides in a four-bedroom home in Russell Township, Ohio, with his wife and their son, and, as the trial court described, "lives an upscale life-style commensurate with his income." He has virtually no relationship with J.M.G. In contrast, J.G. and J.M.G. live with her parents. J.G. is

unemployed, does not drive, and has no independent transportation.[3] The trial court found that J.M.G. lives a "basic" lifestyle with his mother and her parents in his grandparents' home and "is not experiencing the life-style commensurate with the socio-economic status of his father." The record reflects that J.G.'s current child-related expenses range from $1,520 to $3,470 a month, depending on which items are included as child-related expenses.

{¶31} Under the particular circumstances of this case, the trial court found it "fair and equitable" to the parties and "in the best interests of the child" to use the extrapolation method in computing child support, concluding that the extrapolation method "allows for the child to be maintained at a standard of living to which he is entitled." Upon review of the relevant law and the record before us, we cannot say that the trial court abused its discretion in using the extrapolation method to compute R.B.'s child support obligation in this case. Although a trial court is not required to use the extrapolation method in calculating an award of child support award under R.C. 3119.04(B), it is not error for a trial court to use the extrapolation method in determining a parent's child support obligation in high income cases, so long as the trial court otherwise complies with the requirements of R.C. 3119.04(B). *Lanham v. Mierzwiak*, 197 Ohio App.3d 426, 2011-Ohio-6190, 967 N.E.2d 1256, ¶ 22 (6th Dist.) ("[A] trial court [does not err] * * * if it used the extrapolation method to determine the amount of

---

[3]Finding J.G. to be in good health, with employable skills as a dancer and insurance agent, the trial court found her to be voluntarily unemployed and imputed an annual income of $50,000 to her in calculating the parties' child support obligations.

child support due."); *Cyr*, 2005-Ohio-504 at ¶ 56 ("Nothing in [R.C. 3119.04(B) * * * prohibits the [trial] court from using [extrapolation] to determine the amount of support due in high income cases; it merely no longer mandates that the court use this method."); *see also Bunkers v. Bunkers*, 6th Dist. No. WD-06-030, 2007-Ohio-561, ¶ 23, citing *Kendall v. Kendall*, 6th Dist. No. OT-04-004, 2005-Ohio-1777, ¶ 25.[4]

{¶32} R.B. argues that a parent's child support obligation "extends only to the [child's] 'necessities,'" and that the amount of child support awarded should have, therefore, been limited to the $1,520 in current, "actual child-related monthly expenses" that R.B. claims had been expressly documented by J.G., rather than the $3,908.15 in monthly child support calculated using the extrapolation method. We disagree. As stated above, a child's "qualitative needs" is only one of the factors the trial court was required to consider in determining an appropriate child support award under R.C. 3119.04(B); another is the "standard of living of the children and parents." *See Siebert v. Tavarez*, 8th Dist. No. 88310, 2007-Ohio-2643, ¶ 38-39 (decision to limit modification of child support solely to increase in custodial parent's actual expenses constituted an

---

[4]In concluding that the trial court did not abuse its discretion in using the extrapolation method to calculate R.B.'s child support obligation, we are mindful of *Siebert v. Tavarez*, 8th Dist. No. 88310, 2007-Ohio-2643, in which this court expressed "significant doubts" as to "whether the court fulfills its statutory duty to determine child support on a case-by-case analysis as required by R.C. 3911.04(B) when it by rote extrapolates a percentage of income to determine child support." *Id.* at ¶ 34. This, however, is not that case. The trial court in this case did not use the extrapolation method "by rote" to determine the appropriate level of child support. Rather, in considering the needs of the child and the standard of living of the child and parents, the trial court reasonably determined, under the particular facts and circumstances here, that the extrapolation method was a fair and equitable means of determining the appropriate amount of child support to be paid.

abuse of discretion under the circumstances; although child of baseball player was "not entitled to a windfall based on [his father's] salary, neither should he be denied a standard of living commensurate with his father's professional success").

{¶33} R.B. also contends that the trial court erred in finding that J.M.G. was entitled to the standard of living he would have enjoyed had his parents married or otherwise resided together with him and that the child support awarded by the trial court using the extrapolation method was thus, in effect, an improper award of "spousal support." R.B., however, misstates the trial court's ruling. The trial court did not determine, as R.B. contends, that J.M.G. "should be entitled to the same lifestyle he would have enjoyed had [R.B. and J.G.] married or resided together with the child." Rather, the trial court held that the child was "entitled to have a life-style with his mother which is reasonable in relationship to the life-style he would enjoy with his father, were the father to participate in his son's life." An award of child support to accomplish such a goal is not tantamount to spousal support, nor, as R.B. suggests, does it "give a mother a windfall for bearing an illegitimate child." Rather, it is the fulfillment of a parent's obligation to provide for and act in the best interests of his or her child consistent with the parent's resources and capabilities. The fact that R.B. never lived with J.M.G. or J.M.G.'s mother does not mean J.M.G. should be denied a lifestyle comparable to that he would have enjoyed had R.B. chosen to actively participate in his son's life.

{¶34} The record reflects that the trial court properly considered both the needs of J.M.G. and the standard of living of J.M.G. and his parents in extrapolating the parties'

child support obligations as required under R.C. 3119.04(B). *Lanham*, 197 Ohio App.3d 426, 2011-Ohio-6190, 967 N.E.2d 1256, at ¶ 22; R.C. 3119.04(B). After reviewing the record, we do not find any abuse of discretion by the trial court in determining R.B.'s modified child support obligation. Accordingly, R.B.'s fourth and sixth assignments of error are overruled.

**Sufficient, Competent Evidence Supporting Judgment**

{¶35} In his final assignment of error, R.B. contends that because the only evidence of J.M.G.'s qualitative needs was J.G.'s testimony regarding her monthly child-related expenses, the trial court's judgment, ordering R.B. to pay "almost three times that amount," "was not supported by sufficient, competent evidence." Once again, we disagree. As discussed above, J.M.G.'s needs were only part of the equation. The record reflects that in extrapolating the child support obligation, the trial court considered both the needs and standard of living of J.M.G. and his parents as required under R.C. 3119.04(B), determining that a fair and equitable child support award was $3,908.15 per month if medical insurance was provided, and $4,026.77 per month if medical insurance was not provided. Based on the foregoing, we find that the trial court's child support determination complies with R.C. 3119.04(B) and is supported by competent, credible evidence. R.B.'s seventh assignment of error is overruled.

{¶36} The judgment of the juvenile court is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
KENNETH A. ROCCO, JUDGE

MARY J. BOYLE, P.J., and
MARY EILEEN KILBANE, J., CONCUR